UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELLMAN AESTHETICS, LLC and DAVID ELLMAN, M.D., Plaintiffs | |
| v. | C.A. No. 1:26-cv-12084 |
| BTL INDUSTRIES, INC., Defendant | |

**MEMORANDUM OF LAW IN SUPPPORT OF DEFENDANT BTL INDUSTRIES, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Plaintiff David Ellman, M.D. ("Dr. Ellman") is an OB/GYN who operates a well-established medical practice in Boca Raton, Florida. Defendant BTL Industries, Inc. ("BTL"), is a Massachusetts-based manufacturer of body-contouring equipment. In March 2023, Dr. Ellman purchased two therapeutic devices from BTL in an arms-length transaction, and he financed the purchase by obtaining a loan from a non-party, MMP Capital. The purchase agreement which Dr. Ellman signed undisputedly governs the parties' rights and obligations. Nevertheless, in a classic example of buyer's remorse, Plaintiffs have brought this lawsuit making sprawling but unfounded allegations of conspiracy, fraud and deceptive conduct.

Specifically, and as presently framed, in Count I of their Second Amended Complaint (hereinafter, "Complaint"), Plaintiffs assert that BTL made representations to Dr. Ellman at the time of the sale in order to induce him to purchase the equipment, purportedly in violation of Florida's Deceptive and Unfair Trade Practices Act. But this claim is barred by the choice-of-law provision in the parties' purchase agreement which stipulates that Massachusetts, not Florida law, governs their rights and obligations. In Count III, Plaintiffs assert a violation of Sections 1 and 2

of the Sherman Act, 15 U.S.C. § 1, *et seq*. This claim also fails, as a matter of law, on numerous grounds, including that Plaintiffs lack anti-trust standing and an anti-trust injury, and because they have not pled market power in a defined market. Count IV of the Second Amended Complaint asserts that the statements made by BTL at the time of purchase constituted fraud. However, this claim fails to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b), and in any event, is based on non-actionable statements of puffery, opinion and optimistic future projections.[1] In sum, and as demonstrated below, none of Plaintiffs' remaining claims are actionable: they should be dismissed by the Court *with prejudice*, pursuant to Fed. R. Civ. P. 12(b)(6).

It bears noting that the Complaint filed in this matter contains nearly identical factual allegations and legal theories that this Court has previously rejected in the matter of *Mark Breiner DDS, LLC v. BTL Industries, Inc.*, Case No. 1:24-cv-12413-FDS ("*Breiner*"). In fact, the same attorneys represent plaintiffs in both cases. In *Breiner*, the Court (Saylor, J.) dismissed the plaintiffs' claim for violation of the Robinson-Patman Act (*see Breiner,* Dkt. 32 at 8–11) and subsequently held that the plaintiff had no viable claim for negligent misrepresentation. *See Breiner*, Dkt. 40 at pp. 27–29 (holding that BTL owed no duty of care to commercial purchasers and that the "ordinary commercial adversary bargainer ordinarily has no duty to use care in supplying information to those with whom he bargains.") Judge Saylor also dismissed substantial portions of the plaintiff's fraud allegations because they amounted to opinion, puffery, or non-

[1] Plaintiffs originally asserted claims for violation of the Robinson-Patman Act and for Negligent Misrepresentation. *See* Complaint, Dkt. 1. In the Second Amended Complaint, filed on August 5, 2026 (Dkt. no. 19), Plaintiffs dropped their claim under the Robinson-Patman Act. In advance of filing the present Motion, counsel conferred pursuant to Local Rule 7.1. After the conference, Plaintiffs agreed to voluntarily dismiss Count II for negligent misrepresentation. <u>See</u> Notice of Partial Voluntary Dismissal Without Prejudice, Dkt. no. 25, filed on September 14, 2026, with the result that only three of the five original counts remain for adjudication.

actionable forward-looking projections. *Id.* at pp. 19–21, 30–32.[2] That reasoning applies with equal force to the present matter.

The remaining three (3) counts of Plaintiffs' Second Amended Complaint – for violation of Florida's Deceptive and Unfair Trade Practices Act (Count I), violation of the Sherman Act (Count III) and fraud (Count IV) – fail to state a claim upon which relief can be granted. Accordingly, the Court should dismiss the Complaint in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6).

## SUMMARY OF RELEVANT ALLEGATIONS OF THE COMPLAINT

Dr. Ellman is a Florida physician operating a "well established" OB/GYN medical practice in Boca Raton, Florida. Second Amended Complaint (herein, "Compl.") at ¶ 11. On March 2, 2023, Dr. Ellman d/b/a Women's Healthcare of Boca Raton, signed a purchase agreement with BTL for an Emsculpt NEO® and an Emsella® device for a total purchase price of $530,580.00. *Id.*, ¶¶ 20, 22.[3] To finance the purchase, Dr. Ellman entered into an Equipment Finance Agreement for the Emsculpt NEO® device with non-party, MMP Capital. *Id.*, ¶¶ 18, 20. Plaintiffs allege that two (2) years later, on March 21, 2025, the rights associated with both contracts were assigned to plaintiff Ellman Aesthetics, LLC ("Ellman Aesthetics"). *Id.*, ¶ 21.

The Terms and Conditions of the Purchase Agreement contain an integrated choice-of-law and forum selection clause, which provides in full as follows: "**Governing Law; Jurisdiction**. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts. The Customer agrees to submit all disputes arising out of, or

[2] The court in *Breiner* has not yet ruled on BTL's Motion to Dismiss Count II of Plaintiffs Second Amended Complaint (Dkt. 47), in which the plaintiff there, like Plaintiffs here, asserted a claim under the Sherman Act.
[3] The agreement ("Purchase Agreement") consists of the one-page Quotation and accompanying Terms and Conditions of Sale. It is attached to the Complaint as Exhibit "A."

relating to, this Agreement to a court in Boston, Massachusetts."[4] Compl., Exhibit "A." The Purchase Agreement also includes a Warranty Disclaimer providing, in relevant part, that the limited warranty on the purchased equipment "IS IN LIEU OF ANY AND ALL OTHER REMEDIES" and that "THERE ARE NO OTHER AGREEMENTS, GUARANTEES, OR WARRANTIES, ORAL, WRITTEN, EXPRESSED, IMPLIED, OR STATUTORY…" *Id.* In addition, the Purchase Agreement contains a section entitled, "Minimum Advertised Pricing" (MAP) Policy, by which the Customer can obtain certain benefits by participating in the policy. Specifically, if the Customer participates, by setting minimum advertised pricing for treatments using the devices, BTL will: (1) include the Customer in BTL's provider directory; (2) provide up to 2 additional years of warranty service at no charge; and (3) discount the standard list price for the future purchase of replacement applicators. *See* Complaint, Exhibit "A" at p.3 ("Minimum Advertised Pricing Policy"). *See also* Compl., ¶¶26, 27 (misstating that participation in the MAP Policy "is not a choice").

Plaintiffs allege that BTL's sales representative made oral statements during a March 2, 2023 meeting that induced Dr. Ellman to purchase the BTL devices. *Id.*, ¶¶ 17–20, 85. Plaintiffs further allege that BTL conspired with non-parties MMP Capital and Spark Marketing to mislead Plaintiffs about the financing terms and marketing services that those companies provided. *Id.*, ¶¶ 13, 15, 18-19, 46-47.[5]

---

[4] The following section, which appears immediately above the Customer's signature line, states: "**Entire Agreement**. Customer agrees to purchase according to these terms and conditions. No other terms and conditions apply unless BTL and Customer expressly agree in writing."

[5] Additional factual allegations of the Complaint with respect to Plaintiffs' claim of fraud are included and discussed below in Argument, Section III, *infra*.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, a complaint must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When determining whether a complaint meets this standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal "is appropriate if the complaint fails to set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008), quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005).

Additionally, allegations of fraud are subject to a higher pleading standard under Federal Rule of Civil Procedure 9(b), which requires that the plaintiff "state with particularity the circumstances constituting fraud." The First Circuit has interpreted this language to require that, absent extraordinary circumstances, the complaint must "specify the who, what, where, and when of the allegedly false or fraudulent representation." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004).

# ARGUMENT

## I. COUNT I IS BARRED BY THE MASSACHUSETTS CHOICE-OF-LAW PROVISION CONTAINED IN THE PURCHASE AGREEMENT

Count I asserts a claim under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.203–.204. Compl. ¶¶ 64–68. However, the claim is barred by application of the parties' contractual choice-of-law clause, which provides that the agreement "shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts." Compl., Exhibit "A." Plaintiffs allege that all of BTL's purportedly unfair or deceptive conduct arose in connection with the sale of BTL equipment. Compl. ¶¶ 17–20, 64–68. By the plain terms of the Purchase Agreement, Massachusetts law governs this dispute, and accordingly, Plaintiffs cannot assert a claim under the Florida Unfair Trade Practices Act.

"As a general rule, Massachusetts courts will give effect to a choice-of-law clause included in the contract itself." *Aspect Software, Inc. v. Barrett*, 787 F. Supp. 2d 118, 125 (D. Mass. 2011); *see also Lambert v. Kysar*, 983 F.2d 1110, 1118 (1st Cir. 1993) (Massachusetts courts "routinely enforce choice-of-law provisions unless the law chosen violates established public policy or bears no reasonable relationship to the contractual transaction between the parties"). A Massachusetts choice-of-law provision will be set aside only where its application would be "contrary to a fundamental policy of a state which has a greater interest than the chosen state, and which would be the state of the applicable law in the absence of an effective choice of law by the parties." *Optos, Inc. v. Topcon Med. Sys.,* 777 F. Supp. 2d 217, 229 (D. Mass. 2011), *quoting* Restatement (Second) of Conflict of Law § 187(2)(b) (1971). "The fact . . . that a different result might be achieved if the law of the chosen forum is applied does not suffice to show that the [forum] law is repugnant to a fundamental policy" of the other state. *Taylor v. E. Connection Operating, Inc.*, 465 Mass. 191, 197 (2013).

Plaintiffs cannot overcome this demanding standard. Florida has no "fundamental policy" that overrides freely negotiated choice-of-law clauses. To the contrary, Florida courts recognize the presumed choice of contracting parties to be governed by the law of another state. *See Southeast Floating Docks, Inc. v. Auto-Owners Ins. Co.*, 82 So.3d 73, 80 (Fla. 2012) ("An agreement between parties to be bound by the substantive laws of another jurisdiction is presumptively valid, and this Court will enforce a choice-of-law provision unless applying the chosen forum's law would contravene a strong public policy of this State."); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999) (Florida choice-of-law clause precluded assertion of claim under the Montana Unfair Trade Practices Act).

In *Epresence, Inc. v. Evolve Software, Inc.*, 190 F.Supp.2d 159 (D. Mass. 2002), the Massachusetts federal district court considered whether a choice-of-law provision calling for the application of California law barred plaintiff's claim under M.G.L. chapter 93A. The Court held that the contractual provision barred the chapter 93A claim. This same conclusion was reached by the First Circuit in *Northeast Data Systems, Inc. v. McDonnell Douglas Computer Systems Co.*, 986 F.2d 607 (1st Cir. 1992). "[T]he relevant question here is whether those additional 'state of mind' or 'bad motive' allegations (together with other, less significant bits of embroidery) take these claims outside the scope of contractual language that says California law will govern 'the rights and obligations of the parties' in respect to the Agreement. We find that they do not." Applying this same reasoning, because the parties contractually agreed that Massachusetts law would govern their agreement, Plaintiffs cannot maintain a statutory claim under the Florida Deceptive and Unfair Trade Practices Act.

Plaintiffs are sophisticated businesspeople—a Florida-licensed physician and his Florida limited liability company—who agreed, in writing, that Massachusetts' substantive law would

govern all disputes arising out of, or relating to, the purchase of the BTL devices. Plaintiffs cannot avoid that bargain by asserting a cause of action under the law of another state. Enforcement of the parties' choice-of-law provision mandates dismissal of Count I of the Complaint.

## II. COUNT III FAILS TO STATE A CLAIM UNDER THE SHERMAN ACT

In Count III of the Second Amended Complaint, Plaintiffs assert a violation of the Sherman Act, 15 U.S.C. §§ 1 and 2. However, this claim fails for a host of reasons. First, Plaintiffs lack antitrust standing and injury; second, they fail to plead market power in a relevant market; third, they fail to allege an agreement in restraint of trade under Section 1 of the Act; and fourth, they fail to state a claim of a monopoly in violation of Section 2 of the Act.

### A. Plaintiffs Lack Antitrust Standing and Fail to Plead Antitrust Injury.

"Plaintiffs must not only meet the typical requirements of Article III standing but also the requirements of the so-called 'antitrust standing' doctrine." *Vázquez-Ramos v. Triple-S Salud, Inc.*, 55 F.4th 286, 293 (1st Cir. 2022) (claim of anti-trust violation under Clayton Act); *MJ's Mkt., Inc. v. Jushi Holdings, Inc.*, 766 F. Supp. 3d 197, 211 (D. Mass. 2025) ("Plaintiffs bear the burden of proving an antitrust injury."). "[T]he absence of 'antitrust injury' will generally defeat standing." *Sterling Merch., Inc. v. Nestlé, S.A.*, 656 F.3d 112, 121 (1st Cir. 2011), *quoting RSA Media, Inc. v. AK Media Grp., Inc.*, 260 F.3d 10, 14 (1st Cir. 2001). Moreover, Plaintiffs must allege that their injury "is the type of injury the antitrust violation would cause *to competition*." *Id.* (emphasis in original).

Plaintiffs here allege only harm to themselves—that the MAP program purportedly prevented Dr. Ellman's new aesthetic business from achieving profitability. Compl. ¶¶ 25, 36, 77 – 80. But that is not an antitrust injury. The required competitive harm "does not mean a simple loss of business or even the demise of a competitor but an impairment of the competitive structure

of the market." *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield*, 373 F.3d 57, 66 (1st Cir. 2004). Plaintiffs in fact plead the opposite: that BTL has been "flooding the market with RPM-governed [Retail Price Maintenance] equipment," Compl. ¶¶ 43, 51, which results in *more* competition, not less. If anything, Plaintiffs allege a market with too much competition, but this cannot constitute an antitrust injury.

The MAP program was voluntary, *see* Compl., Exhibit "A"; *Breiner*, Dkt. 32 at p. 10. The allegation in the Complaint that, "there is no market for these treatment sessions even at prices being offered in the secondary market," Compl. ¶ 82, confirms that any inability to sell treatments was independent of the MAP. *Cf. RSA Media, Inc. v. AK Media Grp., Inc.*, 260 F.3d 10, 15 (1st Cir. 2001). (because injury suffered was "unrelated to [defendant's] allegedly exclusionary conduct" plaintiff lacked antitrust standing).

### B. <u>Plaintiffs Fail to Plead Market Power in a Relevant Market</u>.

A plausible market definition is essential to any Sherman Act claim. *Vázquez-Ramos*, 55 F.4th at 296 - 298 (antitrust claims require proof that defendant exercised or could exercise "a threshold degree of market power"); *see Díaz Aviation Corp. v. Airport Aviation Servs., Inc.*, 716 F.3d 256, 265 (1st Cir. 2013) (summarizing elements of monopolization). Plaintiffs' market allegations are limited to a single conclusory paragraph: "BTL manufactures and sells the body-contouring and/or skin tightening equipment. BTL is the only manufacturer of these particular types of machines as it holds the only patents on the specific type of technology used in these machines." Compl. ¶75. That allegation defines neither the geographic market nor a coherent product market. *See Eastern Food Servs. v. Pontifical Cath. Univ.*, 357 F.3d 1, 5–6 (1st Cir. 2004) (affirming dismissal for failure to define a market). "[P]laintiffs' antitrust claims require 'proof that [defendants] exercise[] or could exercise a threshold degree of market power." *Vázquez-*

*Ramos,* 55 F.4th at 296, quoting *Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 853 (1st Cir. 2016). Plaintiffs make no such allegation.

To the contrary, the Complaint affirmatively pleads facts incompatible with the asserted market. Plaintiffs acknowledge that BTL's products are part of a broader "body-contouring and/or skin-tightening" aesthetic industry, Compl. ¶¶ 7–10, and that the treatments BTL's equipment provides—including muscle toning, fat reduction, skin tightening and treatment of urinary incontinence—are also offered by other modalities. *Id.*, ¶¶ 9, 10, 12. Plaintiffs do not allege the absence of substitute manufacturers, devices, pharmaceuticals (e.g., GLP-1 agonists), or non-device treatments, all of which may compete with BTL's equipment. *See George R. Whitten Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d 547, 552 (1st Cir. 1974). Plaintiffs also concede the existence of a robust secondary market for BTL equipment at "75% – 90% off the original equipment price," Compl. ¶ 42, which precludes any inference that BTL has monopoly power over its own products.

### C. <u>Plaintiffs Fail to Allege an Agreement in Restraint of Trade under Section 1 of the Sherman Act</u>.

Plaintiffs' claim under Section 1 of the Sherman Act requires "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. A manufacturer's unilateral decision to establish conditions on the sale of its products does not constitute a conspiracy under Section 1 of the Sherman Act. *See United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919) ( manufacturer "may announce in advance the circumstances under which he will refuse to sell"); *see also Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984) ("A manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently."). In this case, as the *Breiner* court explained, the MAP program's terms were "clearly stated in the contract and reasonably shaped the expectations of the

parties at the outset of their agreement." *Breiner*, Dkt. no. 40 at p. 16. Thus, the Purchase Agreement, and specifically the MAP provision, cannot be considered to be "coercively" imposed. *See Simpson v. Union Oil Co.*, 377 U.S. 13 (1964). A manufacturer's standard contract terms, voluntarily accepted by buyers, do not constitute the kind of bilateral agreement that Section 1 requires. *Monsanto*, 465 U.S. at 761; *Evergreen Partnering Group, Inc. v. Pactiv Corp.*, 720 F.3d 33, 43 (1st Cir. 2013) (manufacturer "generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently," quoting *Monsanto*, 465 U.S. at 761). Moreover, the Customer's participation in the MAP is voluntary, not coerced. *See* Purchase Agreement, MAP Policy clause, which is prefaced as follows: "***If*** customer participates [in minimum advertised pricing…]"

Plaintiffs' vague allegations that BTL "conspired" with MMP Capital and Spark Marketing, Compl. ¶¶ 13, 19, 46, are equally insufficient. Plaintiffs do not allege any agreement to restrain competition between BTL and those non-parties. Mere parallel conduct, without facts suggesting an unlawful agreement, cannot sustain a Section 1 claim. *Twombly*, 550 U.S. at 570.

### D. Plaintiffs Fail to State a Claim of a Monopoly under Section 2 of the Sherman Act.

A claim under Section 2 of the Sherman Act requires plausible allegations of: (1) monopoly power in a relevant market; and (2) the acquisition or maintenance of that power by improper means. *Cesar Castillo, Inc. v. Sanofi-Aventis U.S., LLC (In re Lantus Direct Purchaser Antitrust Litig.)*, 950 F.3d 1, 7 (1st Cir. 2020). Plaintiffs here have pled neither. The market and market-power deficiencies addressed above, *see supra* § II.B, preclude any monopoly-power allegation. And Plaintiffs' patent-based theory—that BTL has monopoly power because "BTL's equipment uses patented technology that only BTL possesses," Compl. ¶ 81—is squarely foreclosed. "[A] patent does not necessarily confer market power upon the patentee." *Ill. Tool Works Inc. v. Indep.*

*Ink, Inc.*, 547 U.S. 28, 45 (2006). Indeed, the First Circuit has held that the lawful exercise of patent rights is a "legitimate means" by which a firm may maintain market position. *See Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1186 (1st Cir. 1994). Plaintiffs have pled none of the recognized categories of patent-related antitrust violations, such as fraud on the patent office, sham litigation, or tying.

## III. COUNT IV FAILS TO STATE A VIABLE CLAIM FOR FRAUD

Count IV of the Second Amended Complaint asserts a fraud claim based on the same alleged March 2, 2023 oral statements that underlie the Complaint as a whole. Compl. ¶¶ 84–92. To state a claim for fraud under Massachusetts law, the plaintiff must allege "that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to [its] damage." *Danca v. Taunton Sav. Bank*, 385 Mass. 1, 8 (1982), quoting *Barrett Assocs. v. Aronson*, 346 Mass. 150, 152 (1963). Statements that constitute mere opinion or "puffery" are not actionable. *Wasson v. LogMeIn, Inc.*, 496 F. Supp. 3d 612, 633–34 (D. Mass. 2020). Similarly, "optimistic predictions are not false misrepresentations simply because they do not come to fruition." *Access Cardiosystems, Inc. v. Fincke (In re Access Cardiosystems, Inc.)*, 404 B.R. 593, 642 (Bankr. D. Mass. 2009) *aff'd*, 488 B.R. 1 (D. Mass. 2012). Moreover, statements that are contradicted by the plain terms of an integrated written agreement cannot, as a matter of law, be reasonably relied upon. *See Sound Techniques, Inc. v. Hoffman*, 50 Mass. App. Ct. 425, 433–34 (2000).

Dr. Ellman is a sophisticated, "well established" practicing physician and business owner who founded and operates Women's Healthcare of Boca Raton and Ellman Aesthetics, LLC. Compl. ¶¶ 4–5, 11. He is precisely the type of sophisticated buyer who is expected to conduct due

diligence and to verify claims before entering into a significant commercial transaction which, in this case, involved more than half million dollars. He is also bound by, and presumed to have read the contracts he signed. *See Lopez Rivera v. Stetson*, 103 Mass. App. Ct. 187, 190 (2023) ("in the absence of fraud, one who signs a written agreement is bound by its terms whether he reads and understands it or not"). The Massachusetts choice-of-law and integration provisions which govern the parties' rights and obligations, as well as the MAP terms, the warranty disclaimer, and the purchase price are all clearly stated, in writing, in the Purchase Agreement.

Each of the eighteen alleged misrepresentations in Paragraph 85 of the Complaint fails as a matter of law for one or more of the following reasons: it is non-actionable opinion or puffery; it is an optimistic projection of future results that cannot, as a matter of law, support a fraud claim; it is contradicted by the plain terms of the Purchase Agreement and is therefore not reasonably relied upon; it concerns the MMP Capital Equipment Finance Agreement (a contract between Dr. Ellman and a non-party), and as to which Dr. Ellman, as a sophisticated business owner, was expected to perform his own due diligence before signing; or, it does not constitute a promise at all. The Court should apply the same analysis Judge Saylor applied in *Breiner*, where at least six of the original thirteen alleged statements were dismissed as opinion, puffery or a projection and four additional new statements were rejected for the same reasons.

### A. <u>Five of the Purportedly Fraudulent Statements Are Non-Actionable Opinion or Puffery</u>.

Subparagraphs 85(e), (f), (j), (o), and (r) of the Second Amended Complaint constitute mere sales talk, opinion, or generalized superlatives that cannot make out a fraud claim. *See Wasson*, 496 F. Supp. 3d at 633–34; *see also Breiner,* Dkt. 40, at pp. 19 - 20, 31.

- **¶85 (e)** ("The 'BTL plan' could not fail . . . 'it will be a success'"): this allegation is substantively identical to the allegation made in *Breiner*, that "Emsculpt NEO is the holy

grail and, like death and taxes, Emsculpt NEO is a certainty in life," which that court dismissed as non-actionable opinion. *See Breiner*, Dkt. 40 at p. 20.

- **¶85 (f)** ("No one could afford to pay the machines in total"): this allegation is sales-talk opinion, not susceptible to being proven literally true or false. *Cf. Breiner*, Dkt. 40 at p. 31 (statement that "BTL is very strict on pricing" is "not . . . susceptible to being proven literally true or false").

- **¶85 (j)** ("The Emsculpt NEO® was going to replace cool sculpting"): this allegation is a generalized forward-looking opinion about a product's future market position and, as such, is quintessential puffery. *See Suero v. NFL*, No. 22-CV-31 (AKH) (BCM), 2022 U.S. Dist. LEXIS 228206 at *29 (S.D.N.Y. Dec. 16, 2022).

- **¶85 (o)** ("Dr. Ellman will be flooded with business"): this allegation is forward-looking puffery indistinguishable from "stronger-than-expected" revenue claims rejected by the Massachusetts district court in *Wasson*, 496 F. Supp. 3d at 633–34.

- **¶85 (r)** ("Dr. Ellman would need to purchase a separate telephone line for marketing calls and would need to answer the calls within 14 minutes"): this allegation is sales advice, not a representation of fact. The *Breiner* Court rejected the same statement as non-actionable. *Breiner* Dkt. 40 at pp. 31–32 (referencing *Breiner* complaint at ¶ 25(r)).

**B. <u>Six of the Purportedly Fraudulent Statements Are Non-Actionable Optimistic Projections of Future Results</u>.**

Subparagraphs 85(c), (d), (g), (h), (l), and (p) of the Second Amended Complaint are predictions of future earnings, future advertising activity, or future market events. "[O]ptimistic predictions are not false misrepresentations simply because they do not come to fruition." *In re*

*Access Cardiosystems*, 404 B.R. at 642; *see also Breiner,* Dkt. 40, at pp. 20, 31 (dismissing materially identical projections).

- **¶85 (c)** ("Dr. Ellman would make a million dollars a year in an all-cash business with national advertising campaign that BTL would launch"): this allegation is an optimistic earnings projection coupled with a forward-looking statement about a planned BTL ad campaign.

- **¶ 85 (d)** ("Rob Gronkowski and Kim Kardashian would be the pitch person celebrities for the national advertising campaign"): this allegation is a forward-looking prediction about a contemplated marketing campaign.

- **¶ 85 (g)** ("To break even, Dr. Ellman would only need to make two sales using the Emsculpt NEO and two sales using the Emsella®"): this allegation is a break-even projection. The *Breiner* Court concluded that the materially identical statement that, "Breiner will make 2.5 times the investment on one system before needing to replace the paddles" was a non-actionable "optimistic prediction about the future." *Breiner,* Dkt. 40, at p. 31.

- **¶ 85 (h)** ("Dr. Ellman would be bringing in so much money that he would need to incentivize his staff with a percentage of the profits"): this allegation is a forward-looking earnings projection and salesperson optimism.

- **¶ 85 (l)** ("Dr. Ellman would get $400 per treatment with the Emsella®"): this allegation is a future per-treatment revenue projection.

- **¶ 85 (p)** ("Dr. Ellman would easily break even each month by just selling 2 sessions of the Emsculpt NEO® and 2 sessions of the Emsella®") Like ¶ 85(g), this allegation is a break-even projection which is not actionable.

C. **Four of the Purportedly Fraudulent Statements Are Contradicted by the Plain Terms of the Purchase Agreement and therefore Cannot Establish Reasonable Reliance.**

Subparagraphs 85(a), (b), (i) and (q) of the Second Amended Complaint contradict the written terms of the agreement that Dr. Ellman signed. As a matter of law, a statement contradicted by the plain terms of an integrated written contract cannot be reasonably relied upon. *Sound Techniques, Inc. v. Hoffman*, 50 Mass. App. Ct. 425, 433-34 (2000) ("there is no reasonable basis for ignoring the plain language of the merger clause, in which [plaintiff] agreed that it was entering into the contract free from influence by or in reliance upon any representations other than those set out in the contract"). The Purchase Agreement between Plaintiff and BTL provides that, "THERE ARE NO OTHER AGREEMENTS, GUARANTEES, OR WARRANTIES, ORAL, WRITTEN, EXPRESSED, IMPLIED, OR STATUTORY." Compl., Exhibit "A." Each of the alleged verbal representations below are not actionable because they are precluded by the agreement's integration clause.

- **¶ 85 (a)** ("Dr. Ellman would be one of 6 ambassador sites that BTL will actively support and promote");
- **¶ 85 (b)** ("Dr. Ellman would need to purchase not one, but two machines" to be an ambassador);
- **¶ 85 (i)** ("There would be only six ambassadors throughout the southeast region with two in Florida and one in Puerto Rico"): this allegation has the same defect; it is contradicted by the integration clause in the Purchase Agreement. For that reason, the *Breiner* court rejected the substantially similar statement that Breiner "would be the only academic center in the area" because it constituted a non-actionable "prediction about where other centers might be located." *Breiner,* Dkt. 40 at p.31.

- **¶ 85 (q)** ("Dr. Ellman and BTL would be doing business together since he was going to be an ambassador"): By its terms, the agreement disclaims any oral or extra-contractual guarantee and makes no "ambassador" commitment.

### D. Two of the Purportedly Fraudulent Statements Concern the MMP Capital Equipment Finance Agreement, to which BTL is not a Party and as to which Dr. Ellman was Expected to Read and Perform his Own Due Diligence.

Subparagraphs 85(m) and (n) of the Second Amended Complaint concern the terms of the Equipment Finance Agreement between Dr. Ellman and non-party MMP Capital.

- **¶ 85 (m)** ("Dr. Ellman was leasing the equipment because no one could afford to pay for the cost of the machines"): this allegation is contradicted by the BTL purchase agreement (which is a purchase, not a lease) and by the MMP Equipment Finance Agreement (which is a financing contract, not a lease). Both contracts were signed by Dr. Ellman on the same day. *See* Compl. ¶ 20 and Composite Exhibit “A.”
- **¶ 85 (n)** ("If Dr. Ellman was not successful after 6 months, he could stop paying and they would just come take back the equipment"): this allegation likewise concerns the terms of the Equipment Finance Agreement with MMP, which Dr. Ellman could have verified by reading the contract he signed. Any reliance on a contrary oral representation by BTL is unreasonable as a matter of law and not actionable.

In fact, Plaintiffs concede that MMP is a separate “financing company.” Compl. ¶¶ 13, 15. Because BTL is not a party to the contract between Plaintiffs and MMP, it cannot be liable for representations concerning its terms. *See Savage v. City of Springfield*, No. 3:18-CV-30164-KAR, 2021 U.S. Dist. LEXIS 44150 at *37 (D. Mass. Mar. 8, 2021) (dismissing breach of contract claim where plaintiff sued for failure to enforce a contract but was neither a party to the contract nor a third-party beneficiary to that contract); *see also Northeast Data Sys. v. Genesis Computer Corp.,*

C.A. No. 83-3336-Y, 1992 U.S. Dist. LEXIS 3552 at *16 (D. Mass. Mar. 23, 1992) (defendant not negligent for failing to enforce contract where plaintiff was a "stranger to the contract" and defendant owed no duty to the plaintiff with respect to the contract).

## CONCLUSION

For all of the reasons set forth above, Defendant BTL Industries, Inc. respectfully requests that this Court DISMISS Plaintiffs' Second Amended Complaint in its entirety, *with* prejudice.

BTL INDUSTRIES, INC.
By its attorneys,

*/s/ Jon C. Cowen*
Jon C. Cowen (BBO #552961)
Harbor Light Legal, LLC
P.O. Box 2241
Rockport, MA 01966
Tel: 508-341-3180
Jon.c.cowen@outlook.com

Dated: September 18, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2026, this document was filed through the Court's electronic filing system and was sent electronically to the registered participants identified on the Notice of Electronic Filing.

*/s/ Jon C. Cowen*
Jon C. Cowen